UNITED STATES v. FREEDMAN & SLATER, INC. (No. 4684)[1]

---

[1] C. A. D. 486.

United States Court of Customs and Patent Appeals, March 27, 1952

*David N. Edelstein*, Assistant Attorney General (*Joseph F. Donohue, Alfred A. Taylor, Jr.*, and *Daniel I. Auster*, special attorneys of counsel), for the United States.

*Siegel, Mandell & Davidson* (*Sidney Mandell* and *Howard C. Carter* of counsel; *Barnes, Richardson & Colburn* and *Sharretts, Hillis & Paley*, associate counsel) for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal by the Government from the judgment of the Second Division of the United States Customs Court, sitting in appellate term, Reap. Dec. 7974, affirming, one judge dissenting, the judgment of the trial court in adjudging foreign value and export value, as defined by section 402 (c) and (d) of the Tariff Act of 1930, to be the proper basis for determining the value of wet, salted "frigorifico"[1] sound bull hides exported from Buenos Aires, Argentina, and entered at the port of New York in July 1944, and holding the corresponding entered value to be correct.

The involved merchandise consists of two shipments of wet, salted "frigorifico" sound (standard) bull hides, entered at the unit invoice price of 78 pesos per 100 kilos plus certain dutiable charges which are not in dispute.

The merchandise in reappraisement No. 171098–A was appraised at 78 pesos per 100 kilos plus 6.46 per centum, in addition to the aforesaid dutiable charges. In reappraisement No. 171699–A the hides were appraised at 78 pesos per 100 kilos plus 6.7778 per centum, plus the dutiable charges.

The summary sheet attached to each entry contains the notation "Sec. 14.3 (*e*), C. R. 1943 applies." That section reads as follows:

(e) When merchandise subject to an ad valorem rate of duty has decreased in weight by reason of evaporation or otherwise, and the value of the unit of quantity has correspondingly increased, such advance shall not be deemed an advance in value for the purpose of assessing additional duty.

---

[1] A "frigorifico" is an Argentine slaughterhouse engaged in preparing frozen meat for export, and a "frigorifico sound bull hide" is the hide stripped from a bull slaughtered at a "frigorifico."

In the brief of counsel for the importers is found the following explanation of the formula employed in the action taken by the appraiser:

It is obvious from an examination of the entries and invoice papers accompanying same that the per centum amounts added by the Appraiser were the result of a mathematical computation to equal the weight lost by evaporation or shrinkage as indicated by the weights shown on the invoices and the weights found by the United States Weigher upon arrival at New York. The invoice weight on entry 704314 (reappraisement No. 171098–A) was 9,718 kilos or 21,424 lbs. The net landed weight as reported by the surveyor was 20,124 lbs. which is a difference of 1,300 lbs. or 6.46% of the net landed weight. On entry 704313 (reappraisement No. 171699–A) the shipping weight was 9,211 kilos or 20,307 lbs. The United States Weigher's report indicates a net landed weight of 19,108 lbs. or a difference of 1,289 lbs., which is 6.7778% of the net landed weight.

In challenging the correctness of the appraiser's returns, counsel for the importers introduced in evidence the testimony of three individuals experienced in dealing in hides. They testified that at the time of the exportation of the involved merchandise the prevailing market price in the Argentine was 78 pesos per 100 kilos; that loss of moisture in the hides did not decrease nor increase the unit value of frigorifico bull hides; that no allowance was made for the moisture content, that is, the buyer assumed the risk of loss of weight due to shrinkage or evaporation; that frigorifico sound bull hides were sold at a certain number of Argentine pesos per 100 kilos FOB frigorifico, and that the price did not decrease by reason of loss of weight due to shrinkage or evaporation; that the price was uniform in the home market for that type of merchandise; and that the foregoing price did not vary by reason of the quantities offered or sold.

In reaching its decision, the trial court noted that—

Section 402 of the Tariff Act of 1930 sets up five bases of value, i.e., foreign value, export value, United States value, cost of production, and American selling price, and for the purposes of that act all imported merchandise is required to be valued upon one of such bases. While appraising officers are bound by the valuation statute, unfortunately no requirement has been laid upon them to make known by suitable notations on the official papers the basis of value found and adopted by them in any given case. Thus, in the case at bar, there is nothing in the official papers which would directly indicate upon what basis the appraiser appraised the hides.

However, counsel for the defendant [Government] stated &ast; &ast; &ast;:

I will say that the appraised value represents both the foreign value and the export value of the merchandise.

Taking into consideration with the foregoing statement the fact that the appraisement was made in Argentine pesos, I believe I am justified in concluding that the value basis adopted by the appraiser was under section 402 (a) (1), reading as follows:

SEC. 402. VALUE.
(a) Basis.—For the purposes of this Act the value of imported merchandise shall be—

(1) The foreign value or the export value, whichever is higher;

\* \* \* \* \* \* \*

During the course of the trial counsel for the Government contended that the importer had failed to rebut the presumed correctness of the appraiser's action by not proving that merchandise in the same condition as the merchandise imported, that is, shrunken hides, were offered for sale in Argentina. That contention was dismissed by the court in the following language:

\* \* \* This contention is contradicted by and inconsistent with the appraisement upon which defendant relies, for, being on the basis of foreign and export value, it presupposed the offer for sale in the foreign market of merchandise such as or similar to that here involved. Since the plaintiff [importer] herein challenged only the percentage advances of the appraisements, it was entitled to rely upon the presumption of correctness attaching to all other items of the appraisements, including the presumption that merchandise such as or similar to that imported was offered for sale in the country of exportation under the terms of the valuation statute. *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. 60, C. A. D. 371. Moreover, the record shows that there was no allowance made in the foreign market on account of moisture content, nor was there any standard moisture content, nor did the price in the foreign market of wet salted frigorifico sound bull hides increase by reason of loss of weight due to evaporation or moisture or shrinkage.

The defendant's [Government] case is based upon the theory that although the total number of units of weight of hides received was less than the number which was shipped, the value of each unit increased sufficiently during the voyage of importation so that the total value of the shipment did not vary. This, however, does not conform with the facts. The record shows that at the time of exportation of the wet salted frigorifico sound bull hides here in question such hides were offered for sale and sold by weight in Argentina, the unit of weight being 100 kilograms, and that the price per unit was 78 Argentine pesos, as claimed by the plaintiff [importer]. There is nothing to show that because of their shrunken condition the unit value of the hides in question in Argentina at the time of exportation was greater than 78 Argentine pesos per 100 kilograms.

In its appeal from the judgment of the trial court, counsel for the Government assigned forty-one alleged errors which included the contention that the proper dutiable value should be determined by the condition of the goods *at the time of their actual importation into the United States rather than by their condition at the time of exportation from Argentina*. They further contended that the trial court committed reversible error in refusing to allow the introduction of evidence intended to show that the condition of the goods at the time of importation differed in a tariff sense in a number of material respects from their condition at the time of exportation from Argentina, thus thereby increasing their value.

The majority of the appellate division sustained the judgment of the trial court stating in part

Counsel for appellant assigns as error various other rulings made by the trial court as to the admission and exclusion of evidence, all of which have had our

careful consideration. While we are not in entire accord with the ruling on some of these motions, yet each of them was addressed to the sound, legal discretion of the trial court, and, based upon an examination of the entire record, we are unwilling to hold that in making the rulings complained of, the trial court abused its discretion.

However, the dissenting judge in his opinion observed that—

It is apparent from the record, however, that counsel for appellant was not content to rely solely upon the alleged omissions of proof on the part of appellee in this case. Instead he attempted to show affirmatively that the hides in their condition as imported differed from the hides in their condition as exported, the difference being attributable to shrinkage by evaporation of water, and that since merchandise must be appraised in its condition as imported, the appraiser had not erred in making additions for shrinkage. In this endeavor, which was manifest by persistent and determined efforts to introduce evidence to establish these ultimate facts, counsel for appellant was not permitted to proceed. The court did not allow questions tending to establish this line of proof to be put to witnesses called by the defendant nor asked on cross-examination of those testifying on behalf of plaintiff.

Here counsel for the Government advance nineteen specific assignments of error. We believe, however, that in the disposition of this appeal it is necessary to consider but one of those assignments; namely, that the appellate division erred "In sustaining the action of the trial court with respect to the exclusion of evidence offered by appellant herein." That assignment of error is directed to the refusal of the trial court to receive evidence offered by counsel for the Government relative to the sale of "such or similar" hides in the Argentine, and to the effect that the imported hides had undergone certain material changes in transit and had consequently increased in value by the time they were imported into this country.

In deciding that question, we advert to a portion of the opinion of the trial court:

Now, of course, it must be remembered that the value statute refers to the value in the principal markets of the country of exportation of merchandise such as or similar to that *imported*, and it might not be amiss to point out that it is not the value of the merchandise which was *exported* which is in question, but the value of the merchandise which was imported. (Italics quoted.)

We are in thorough agreement with that view. Consequently, we believe that the testimony offered by counsel for the Government should have been admitted.

As noted by the dissenting judge,

* * * the court sustained objections to questions tending to elicit proof as to whether loss of weight during transportation of frigorifico hides was usual or was customarily anticipated; whether shrinkage or evaporation of the water content results in loss of material; whether the desired element in the purchase of hides was the hide fiber, or what the desired element in fact was; what was the effect of shrinkage on the leather content; whether shrinkage affects the quantity of product to be obtained from the hide either adversely or beneficially; whether hides such as or similar to those in issue, in their imported condition were offered for sale in Argentina, and at what price.

We note from the record an agreement that this is to be considered a test case upon which a substantial number of controversies of a similar nature between importers and the Government will likely be resolved. That is an additional reason we feel all competent testimony bearing upon the questions in issue should be received.

We have examined the entire record with great care and are firmly of the opinion that the testimony sought to be presented by the Government was relevant and material to a clear understanding and proper disposition of the issues involved and should have been admitted.

Accordingly, the judgment of the appellate division is hereby *reversed* and the cause *remanded* for further proceedings consistent with the views expressed herein.